**Donald M. WINGATE, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, Department of Health and Rehabilitative Services, State of Florida, Respondent-Appellee.**

**No. 71-2898.**

United States Court of Appeals, Fifth Circuit.

July 25, 1972.

Phillip A. Hubbart, Public Defender, Bennett H. Brummer, Asst. Public Defender, Miami, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before TUTTLE, GEWIN and THORNBERRY, Circuit Judges.

GEWIN, Circuit Judge:

Donald Wingate appeals from the judgment of the district court dismissing his petition for a writ of habeas corpus in connection with his Florida state conviction for robbery. After careful examination of the record we conclude that harmful constitutional error was committed in the course of the state court trial. We therefore reverse the judgment of the district court and remand with instructions.

Wingate was tried before a jury in the Florida Criminal Court for the July 9, 1968 robbery of a small store. Over defense objections the state announced to the jury that it would prove that the petitioner had committed four other robberies for the purpose of showing a "course of conduct." During the trial and over defense objection one Joseph Hellman testified that Wingate had robbed him at a Farm Store on December 11, 1967 and again on January 2, 1968. One James Angel also testified over objection that Wingate had robbed him at a gas station on December 23, 1967. The defense objected and moved to strike this testimony on the ground that Wingate had been tried and acquitted in the Florida Courts on the charges of robbing Hellman on January 2, 1968 and Angel on December 23, 1967. The defense also objected on the ground that the testimony bore no relevance to the instant case and constituted an attack on the character of the defendant. The motions to strike and for a mistrial were denied by the state court.

During the closing arguments to the jury, the state prosecutor commented:

". . . I hope you realize that there is more at stake today than one man's freedom. I think there is at stake today the protection and safety of society. [Defense counsel] is asking you to let this man walk back on the streets again; and I am asking you not to; *I am asking you not to allow this man to go back on the street and to redo those things that he has done.*" (emphasis added)

Wingate was found guilty by the jury and sentenced to 15 years at hard labor in the state penitentiary.

In considering Wingate's petition for habeas corpus the district court concluded that he had exhausted his state remedies. However the court found that the admissibility of the evidence of the two prior robberies for which Wingate had been tried was not affected by the fact that he had been acquitted of those robberies. The court held that the admission of the evidence of those two

robberies in this case did not amount to a denial of due process.

■ The court correctly observed that evidence of other crimes is generally admissible when such evidence tends to directly establish the requisite intent in the commission of a particular crime, or a common scheme or plan related to the crime for which a defendant is being tried. This is the rule in the federal courts, United States v. Mancuso, 444 F. 2d 691 (5th Cir. 1971); United States v. Hayes, 444 F.2d 472 (5th Cir. 1971), even where the defendant has not been convicted of the other crimes shown, United States v. Perkins, 444 F.2d 1329 (5th Cir. 1971). A similar rule is applied in the Florida courts, Williams v. State, 247 So.2d 425 (Fla.1971); Hawkins v. State, 206 So.2d 5 (Fla.1968); Williams v. State, 143 So.2d 484 (Fla. 1962); Williams v. State, 117 So.2d 473 (Fla.1960); Williams v. State, 110 So.2d 654 (Fla.1959), cert. denied 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).

In view of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and its progeny, it is our opinion that the district court erred in holding that the fact that Wingate was actually tried and acquitted of the two robberies does not affect the admissibility of such evidence, particularly in light of the accumulated error of the prosecutor's assertion and argument.[1] Not only did the prosecutor assure the jury that the state would prove that the petitioner had committed four other burglaries, he kept his promise and then asked the jury not to allow the petitioner the liberty to go back on the street and again do those things which he had done.

■ At least since Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948) it has been the rule in the federal courts that the doctrine of res judicata applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined, though the offenses be different. 332 U.S. at 578, 68 S.Ct. at 239, 92 L.Ed. at 184. In Yawn v. United States, 244 F.2d 235 (5th Cir. 1957) this court followed *Sealfon* in reversing a conviction for conspiracy to violate the Internal Revenue Code by unlawfully possessing distilling apparatus and spirits. One of the ten overt acts alleged by the Government in furtherance of the conspiracy—possession of a still—had been the basis of a substantive charge of possession of an illegal still for which Yawn had been previously tried and acquitted. This court said:

"... [T]he Government had, and has, every right to establish the guilt of the accused of the separate offense of conspiracy to violate the liquor tax laws despite the acquittal of unlawful possession of the still .... But to allow the Government to have a second opportunity to establish the precise fact of possession decided by another Court of competent jurisdiction in favor of the accused is to ignore the rule that '* * the same facts can not be twice litigated by the same sovereign against the same defendant.'" 244 F.2d at 237.

---

1. Wingate's conviction was affirmed by a two to one decision of the District Court of Appeal of Florida, Third District, Wingate v. State, 232 So.2d 44. Chief Judge Pearson dissented on the ground that it was error to admit evidence of the two robberies of which the petitioner had previously been tried and acquitted and because of the prejudicial nature of the prosecutor's comments. In the course of his dissent he stated:

It is my firm persuasion that the appellant was not afforded a fair trial because of the accumulated errors in the admission of evidence concerning other crimes and the unwarranted and prejudicial comments of the prosecutor.

.   .   .   .   .

Prosecutors should content themselves with presenting competent, relevant evidence and refrain from overkill, which as in the present case, prejudices a defendant's right to a fair trial.

The question of whether this rule of "collateral estoppel" is constitutionally required was avoided by the Supreme Court in Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958).[2] When the Court next faced that question in *Ashe* it had already overruled Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), by holding the double jeopardy prohibition of the Fifth Amendment applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In *Ashe* the Court noted that unlike *Hoag* the question was not whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment guarantee against double jeopardy.

"If collateral estoppel is embodied in that guarantee, then its applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of 'fundamental fairness,' but a matter of constitutional fact we must decide through an examination of the entire record." 397 U.S. at 442–443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

The Court then held that "this established rule of federal law", collateral estoppel, is embodied in the Fifth Amendment guarantee against double jeopardy. 397 U.S. at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476.

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed. 2d at 475.

■ The determination of whether collateral estoppel applies in a criminal case where a previous judgment of acquittal was based on a general verdict requires a court to examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–476; Turner v. Arkansas, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972); Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971).

■ Wingate contends that collateral estoppel does not depend upon the cause of action or ultimate facts in question at a subsequent trial; it depends upon whether a particular fact arising in a subsequent trial was previously litigated and determined. Thus he argues that the two jury verdicts of not guilty and the judgments of acquittal entered thereon precluded the state from re-asserting and submitting to the jury at a subsequent trial that he had committed the robberies.

The state contends that there is a distinction between "collateral estoppel" as embodied in the Double Jeopardy Clause which precludes the reprosecution for those acts arising out of the "same offense" on the one hand; and "collateral estoppel" as an abstract principle, which involves no reprosecution, on the other

---

2. The court in *Hoag* rejected a broad challenge under the 14th amendment that the defendant's consecutive trials for different offenses arising out of the same occurrence violated due process. The Court denied Hoag's contention that the state was collaterally estopped to relitigate the issue of his identity. The Court said that it was not necessary to decide whether collateral estoppel was constitutionally required since the New Jersey Courts recognized the rule, but had concluded that in this case the previous acquittal did not give rise to such an estoppel. The Court declined to overturn that finding of the New Jersey Court.

hand.[3] The state notes that the recent Supreme Court cases have all involved multiple prosecutions arising out of the same transaction or same offense. Without this identity of transaction or offense, the state argues, the issue of double jeopardy is not properly raised.

The district court held that *Ashe* and its concept of collateral estoppel presented no bar because the issues which the state relitigated were not issues of "ultimate" fact in the second prosecution. In essence, the state's theory, as accepted by the district court, is that as long as Wingate is not prosecuted for the earlier offenses of which he was acquitted, or for any other offenses arising from these same "transactions" the state is not precluded from relitigating any issue settled by the earlier acquittal. However neither the language of the courts in applying the doctrine of collateral estoppel nor a common sense consideration of the purposes of the double jeopardy clause support this position.

Although both Mr. Justice Brennan in his concurrence and Chief Justice Burger in his dissent discuss the "same transaction" test as a standard for double jeopardy we do not believe that the holding in *Ashe* rests on that foundation. Instead the Court speaks in terms of prohibiting a *relitigation* in any future lawsuit between the same parties of issues actually determined at a previous trial. 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475; Simpson v. Florida,

403 U.S. at 385, 91 S.Ct. at 1802, 29 L.Ed. 2d at 551; Harris v. Washington, 404 U.S. 55, 57, 92 S.Ct. 183, 185, 30 L.Ed.2d 212, 215 (1971). Certainly where an issue has been determined in a prior prosecution, the state is barred from bringing any subsequent prosecution in which a different determination of that issue is necessary to prove the offense charged. But we are unable to find in either the older cases applying the doctrine of collateral estoppel or the more recent Supreme Court cases any basis for limiting the prohibited relitigation of a previously resolved issue to only those suits where the relitigation is essential for the maintenance of the subsequent lawsuit. *See* United States v. DeAngelo, 138 F.2d 466 (3d Cir. 1943); United States v. Kramer, 289 F.2d 909 (2d Cir. 1961); Laughlin v. United States, 120 U.S.App.D.C. 93, 344 F.2d 187 (1965). *Cf.*, James Talcott, Inc. v. Allahabad Bank, Ltd., 444 F.2d 451, 458 (5th Cir. 1971).

We do not perceive any meaningful difference in the quality of "jeopardy" to which a defendant is again subjected when the state attempts to prove his guilt by relitigating a settled fact issue which depends upon whether the relitigated issue is one of "ultimate" fact or merely an "evidentiary" fact in the second prosecution. In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is

---

3. The State relies on the decisions of this court in Pilcher v. United States, 113 F. 248 (5th Cir. 1902) and Lindsey v. United States, 227 F.2d 113 (5th Cir. 1955) for the proposition that a prior acquittal is immaterial in considering the admissibility of evidence of a separate crime. In *Lindsey* the court held that the acquittal of Lindsey's wife on state charges of prostitution would not preclude the United States from proving that she had engaged in prostitution in connection with Lindsey's prosecution under the federal Mann Act. In such a case there is no possibility of collateral estoppel since both cases involved different defendants and different prosecuting sovereigns. *See*

United States v. Smith, 446 F.2d 200, 202 (4th Cir. 1971); Serio v. United States, 203 F.2d 576, 578 (5th Cir. 1953). In *Pilcher* the court in reversing for other erroneous testimony at trial, noted that testimony offered by the government to prove the defendant broke a warehouse lock was admissible in his trial for removal and concealment of distilled spirits —notwithstanding his prior acquittal on a charge of breaking the lock. It is not clear whether the issues in the first case would have given rise to a collateral estoppel in the second, but to the extent that *Pilcher* is inconsistent with *Ashe* the decision in *Ashe* must be followed.

offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial. We are in agreement with Judge Friendly's conclusion in United States v. Kramer, 289 F.2d 909 (2d Cir. 1961).

> "The Government is free, within the limits set by the Fifth Amendment, . . . to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be."

*Id.* at 916.

The state here charged Wingate with an offense no part of which had been previously litigated. There was therefore no bar to the prosecution itself, since proof of all the essential elements of the offense charged would not necessarily require a relitigation of any issue previously determined. *Yawn,* supra.

However in an earlier prosecution the state had sought to prove that Wingate robbed Hellman on January 2, 1968, and to convict him for that robbery. The state failed and Wingate was acquitted.

The state later prosecuted Wingate for another robbery and as part of its proof that Wingate committed the second robbery again offered the same proof that Wingate robbed Hellman on January 2, 1968. The state pursued the same course with regard to the robbery of Angel on December 23, 1967. In both instances the state sought to prove to the later jury what it had failed to prove to the earlier juries—that Wingate had robbed Hellman and Angel.

In doing so the state violated Wingate's rights under the double jeopardy clause of the Fifth Amendment as applied to the state through the Fourteenth Amendment.[4] *Ashe,* supra; *Simpson,* supra; *Harris,* supra. The prosecution simply may not in the course of any subsequent trial of the same parties relitigate an issue which was determined as an issue of ultimate fact in an earlier prosecution. In view of the state's heavy reliance on the proof of the other offenses to establish Wingate's guilt we find that the error was not harmless and his conviction can not stand.[5]

We do not hold that the Florida evidentiary rule which permits evidence of other offenses to be admitted to show intent, knowledge or common scheme or plan violates due process.[6] We do not hold that the state rules governing the admissibility of such evidence must be

---

4. The State also argues that Wingate has failed to demonstrate that the testimony as to facts sought to be excluded at the trial were actually concluded by the prior acquittal. In view of the State's offer of the evidence of the prior robberies to show a common scheme or modus operandi it is apparent that the State was seeking to broadly relitigate all of the issues in the previous trial in order to assert that Wingate was guilty of these earlier robberies.

5. The State's proof consisted of the testimony of the robbery victims who identified the defendant, the arresting and investigating police officers and the two other robbery victims who identified the defendant as having robbed them on three separate occasions. In rebuttal the defendant offered proof that he had been tried for two of the three other robberies and had been acquitted on both charges. The records show that the transcript of testimony tending to establish Wingate's guilt of other crimes is more than twice as long as the transcript of testimony tending to establish his guilt of the crime charged.

6. Wingate additionally asserts that the admission of the evidence of the prior offenses for which he was tried and acquitted and the argument of the prosecutor violated his rights under the due process clause of the Fourteenth Amendment. In light of the disposition we make of this case under the Double Jeopardy Clause we do not find it necessary to pass on any of Wingate's due process contentions.

identical with and conform to the federal rules for such evidence. *Ashe* held that collateral estoppel in criminal trials is an integral part of the guarantee against double jeopardy. We hold that under *Ashe* where the state in an otherwise proper prosecution seeks for any purpose to relitigate an issue which was determined in a prior prosecution of the same parties, then the evidence offered for such a relitigation must be excluded from trial and the state must be precluded from asserting that the issue should be determined in any way inconsistent with the prior determination.

It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime. Wingate was charged with robbing Hellman and Angel and as a result of those charges he endured the perils of trial. He was acquitted of those very charges and that should end the matter. As indicated above, the prejudicial nature of this evidence was quickened by the prosecutor's emphatic and improper argument.[7]

The judgment of the district court is reversed and the case is remanded with instructions to grant the writ of habeas corpus unless within a reasonable time the State of Florida proceeds to retry Wingate on this charge.

Reversed with directions.

---

7. In Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) the court concluded that even a prior conviction could not be used to impeach a defendant if the defendant had not been provided with counsel at the time of the prior conviction. If a party cannot even be impeached by the use of a crime for which he has been convicted without counsel, surely guilt should not be established by proving the commission of alleged crimes of which there has been a final judgment of acquittal.