**UNITED STATES of America**

v.

**James F. CRISPINO.**

**Crim. No. 84-71.**

United States District Court, D. New Jersey.

May 29, 1984.

---

W. Hunt Dumont, U.S. Atty. by Faith S. Hochberg, Philip R. Sellinger, Asst. U.S. Attys., Newark, N.J., for the U.S.

Barry H. Evenchick, Evenchick & Title, Livingston, N.J., for defendant.

BROTMAN, District Judge.

Defendant James F. Crispino is charged in the present indictment with four counts of tax evasion. Specifically, the indictment charges that Crispino knowingly and willingly under-reported his taxable income for calendar years 1977 through 1980, in violation of 26 U.S.C. § 7201. Presently before the court are pretrial motions by the United States and by the defendant which require the court to apply principles of double jeopardy and collateral estoppel to determine whether certain evidence which was the subject of defendant's acquittal in

a prior criminal proceeding may be relitigated in the present trial.

## I

In 1980, defendant Crispino was indicted along with fourteen codefendants in the Eastern District of New York on narcotics charges. He and his codefendants were charged with conspiring and participating in a criminal enterprise to import and distribute marijuana and methaqualone. A jury trial was conducted in early 1981 before United States District Judge Henry Bramwell of the Eastern District of New York. Although several of his codefendants were found guilty, Crispino was acquitted of all charges by a unanimous jury.

The present indictment for tax evasion does not charge violations of the narcotics laws, · nor does it explicitly mention the drug transactions which were the subject of defendant's prior acquittal. The government has moved *in limine,* however, for an order permitting it "to introduce evidence of defendant's involvement in the drug transportation business to establish a likely source of defendant's unreported taxable income." Government's Notice of Motion, April 17, 1984. Defendant has cross-moved for an order dismissing the indictment "on the ground that it effectively is barred by the double jeopardy provision of the fifth amendment of the United States Constitution." Defendant's Notice of Motion, April 19, 1984. Defendant's arguments and submissions reveal that his double jeopardy argument proceeds on two levels. He argues, first, that the indictment and pending prosecution are barred. in their entirety by the double jeopardy clause. In the alternative, he contends that the government is collaterally estopped from re-introducing evidence at this trial which was the subject of defendant's prior acquittal, thereby forcing him to relitigate against allegations of which he has already been acquitted.

The government has chosen to pursue this tax evasion prosecution using the "net worth" theory outlined in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). In *Holland,* the Court outlined a two-step showing as one means of satisfying the government's burden of proof in this type of case. First, the government must show that the taxpayer's net ·worth increased during the taxable period. 348 U.S. at 137, 75 S.Ct. at 136. The Court recognized that "[i]ncreases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income." 348 U.S. at 137–38, 75 S.Ct. at 136. The court therefore required as a second step in a "net worth" case that the government show to the jury's satisfaction the "likely source from which the net worth sprang." *Id.* at 138, 75 S.Ct. at 136.

The controversy presently before the court arises from the government's intention to use as evidence of a "likely source" of defendant's income money earned from the drug trafficking enterprise of which he was acquitted in 1981. The government has conceded that it seeks to present to the jury the evidence and fact patterns which have previously been litigated with the resulting verdicts favorable to Crispino. It urges that it is not barred from relitigating these matters because qualitatively different showings are required in the two proceedings.

Under the government's theory, in the original trial federal prosecutors in the Eastern District of New York failed to prove beyond a reasonable doubt that the defendant was guilty of the narcotics offenses with which he was charged. In the instant case a different, lower showing is required, in that the government must only demonstrate a "likely" source of income beyond a reasonable doubt. Government's May 16, 1984, Letter Memorandum at 3. Because a "likely" source is a "qualified" rather than a "definite" showing, relitigation of the underlying evidence is not barred. *Id.* In support of its argument, the government relies on the series of United States Supreme Court opinions holding that a defendant's acquittal on criminal charges does not bar a · subsequent civil action against the same defendant, "even though based on identical facts." *United States v. One Assortment of 89 Firearms,* —— U.S. ——, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones v. United States,* 409 .U.S. 232, 237, 93

S.Ct. 489, 493, 34 L.Ed.2d 438 (1972) (per curiam); *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed.2d 917 (1938).

## II

Before turning to the relevant caselaw, the court will briefly summarize the previous prosecution, in which defendant was acquitted by a jury of all charges. At the request of the court, the parties have supplied it with the indictment, evidence, summations, charge and verdict from the prior proceeding. *See Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), discussed *infra* pp. 1529–31.

Defendant Crispino was charged as one of fifteen codefendants with violations of various narcotics laws in contravention of Title 21 United States Code. Specifically, he was charged in Count One with taking part in a conspiracy between November 10, 1977, and November 11, 1978. The goal of the conspiracy, according to the indictment, was the importation and distribution of marijuana. Count Three of the indictment charged that in or about August, 1978, Crispino and the other defendants imported marijuana from outside the United States into Queens, New York. Count Five charged that in or about November, 1978, Crispino and the other defendants imported marijuana and methaqualone into Queens, New York, aboard the vessel "Terry's Dream." Three other counts of the indictment were dropped after it was returned.

When the case was ultimately tried to the point of verdict, only ten of the original fifteen defendants remained in the case. Of these all ten were charged with Count One. Seven were charged with Count Three, and six were charged with Count Five. Crispino was named in all three counts.

The prosecution's theory at trial was that the defendants were all part of a criminal conspiracy to distribute drugs after importing them by boat. Each of the defendants allegedly played a role in the group effort. A major component of Crispino's role in the alleged enterprise was as a mechanic, to keep the vessel which was to carry the drugs in good working order.[1] The prosecution introduced evidence that Crispino received and handled large sums of cash and questioned Crispino at length about his finances. Crispino denied all involvement in and knowledge of the alleged drug trafficking operation, and explained in detail the sources of his income during the time period in question.

At the conclusion of the trial, the jury reached unanimous verdicts as to all of the defendants. On Count One, five defendants were found guilty and five defendants were acquitted. On Count Three, two defendants were found guilty and five were acquitted. On Count Five, two were found guilty and four were acquitted. In each case, Crispino was among those acquitted.

## III

The motions presently before the court involve the related doctrines of double jeopardy and collateral estoppel as applied to successive criminal proceedings. The court will discuss each of these doctrines and then apply them to the situation at bar.

### A

■ The Fifth Amendment provides in relevant part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." At least three separate guarantees are embodied in the Double Jeopardy Clause: It prohibits against a second prosecution after acquittal, against a second prosecution after conviction, and against multiple punishment for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980). Of these guarantees the one relevant to the case at bar is the first—a second prosecution after acquittal.

---

1. In summation at the first trial, Assistant United States Attorney Shepard stated

   Mr. Crispino, ladies and gentlemen, like everyone else in this conspiracy, had a role to play. He knew about boats. He knew about fixing them. He knew about operating them. He could be trusted to keep this most critical piece of machinery in order and he could be trusted to keep quiet. (Tr. 3645; *see also* Tr. 3682).

"The primary goal of barring reprosecution after acquittal is to prevent the State from mounting successive prosecutions and thereby wearing down the defendant." *Justices of Boston Municipal Court v. Lydon*, —— U.S. ——, ——, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984). The Supreme Court has explained that

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for the same offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Lydon, supra,* —— U.S. at —— - ——, 104 S.Ct. at 1813, *quoting Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The Supreme Court has ruled that the Double Jeopardy Clause attaches "great weight" to judgments of acquittal. *Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982); *United States v. DiFrancesco,* 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980).

▬ The fact of acquittal on one set of charges does not, of course, automatically bar all future criminal indictments and prosecutions of a particular defendant. Where the criminal charges brought in a second proceeding following acquittal are for different offenses or require different elements of proof, double jeopardy poses no total bar to the subsequent prosecution. *Illinois v. Vitale, supra,* 447 U.S. at 416, 100 S.Ct. at 2265; *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

▬ It is thus immediately clear that defendant's argument that this prosecution is barred in its entirety must fail. Income

tax evasion and the previous narcotics offenses with which defendant was charged are simply not the "same offenses." *United States v. Dinitz, supra,* 424 U.S. at 606, 96 S.Ct. at 1079. Moreover, the instant prosecution for tax evasion will require proof of facts not required in the earlier prosecution, *e.g.,* that the defendant had a tax liability exceeding that which he reported to the Internal Revenue Service. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). *See Illinois v. Vitale, supra,* 447 U.S. at 416, 100 S.Ct. at 2265 (1980), *citing Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

### B

▬ The doctrine of collateral estoppel, however, may be implicated in successive criminal prosecutions, even where the later prosecutions are not barred in their entirety by the Double Jeopardy Clause.[2] Collateral estoppel was expressly incorporated into the Double Jeopardy Clause in the landmark Supreme Court case of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

In *Ashe,* the defendant was tried and acquitted on a charge of armed robbery of one of the six participants in a poker game. The state then prosecuted him for the robbery of another of the players, obtaining a conviction on the second prosecution. The Supreme Court ruled that the second trial was barred by collateral estoppel:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the parties in any future lawsuit.

397 U.S. at 443, 90 S.Ct. at 1194. In addition to stating the rule of collateral estoppel, and expressly incorporating it into the

---

**2.** If, however, the issue precluded by collateral estoppel is essential for a conviction in a second trial, prosecution of the later offense is prohibit-

ed. See *United States v. Mespoulede,* 597 F.2d 329, 333 n. 6 (2nd Cir.1979). This is not the situation at bar.

Fifth Amendment, the Court held that the lower federal courts should take a nontechnical commonsense approach in deciding whether an issue has been previously decided:

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires the court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration." ... The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 180] [ (1948) ]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

397 U.S. at 444, 90 S.Ct. at 1194 (citation omitted).

Professor Vestal has explained the estoppel doctrine as follows:

If a defendant has been acquitted of a charge and evidence underlying that charge is offered against the defendant in a subsequent prosecution, issue preclusion should bar such use. Such a situation involves a criminal prosecution that results in an acquittal and a second criminal prosecution in which an effort is made to use the same evidence, which was insufficient in the first prosecution, to convict the defendant.

Vestal, Issue Preclusion and Criminal Prosecutions, 65 Iowa L.Rev. 281, 306 (1980).

The rule of *Ashe v. Swenson,* and the resulting restraint imposed on the government against bringing successive closely related prosecutions have been invoked under appropriate circumstances by the lower federal courts. *See, e.g., United States v. Mock,* 604 F.2d 341, 344 (5th Cir.1979), *aff'd after remand,* 640 F.2d 629 (5th Cir. 1981); *United States v. Nelson,* 599 F.2d 714, 717 (5th Cir.1979); *United States v. Mespoulede,* 597 F.2d 329 (2nd Cir.1979); *Humphries v. Wainwright,* 584 F.2d 702, 705–07 (5th Cir.1978); *United States v. Brown,* 547 F.2d 438 (8th Cir.), *cert. denied,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977); *United States v. Hans,* 548 F.Supp. 1119, 1124–26 (S.D.Ohio 1982); *United States v. Allen,* 539 F.Supp. 296, 309 (C.D.Cal.1982).

Caselaw in the Third Circuit reveals that the court has recognized two distinct but related components to the collateral estoppel doctrine.

First is that specifically enunciated in *Ashe v. Swenson, supra,* described in *United States v. Keller,* 624 F.2d 1154, 1158 (3rd Cir.1980), as the "constitutional scope of collateral estoppel." The constitutional component is exemplified by the fact prototype in *Ashe,* wherein the government is precluded from bringing "multiple or fragmented prosecutions" arising from a single alleged criminal transaction; issues are foreclosed from consideration in a later prosecution arising from that transaction because in an earlier prosecution they have been decided adversely to the government. *Keller, supra,* 624 F.2d at 1157.

The Third Circuit has applied this first component of collateral estoppel in two cases. *United States v. Venable,* 585 F.2d 71 (3rd Cir.1978); *United States v. Pappas,* 445 F.2d 1194 (3rd Cir.1971), *cert. denied sub nom. Mischlich v. United States,* 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1972). In each of these cases, the court found that under the specific facts presented, the defendant had failed to demonstrate that the issues the government sought to litigate were in fact foreclosed by the general verdict of acquittal in the prior prosecutions.

The second and "broader" context in which the Third Circuit has invoked collateral estoppel is the preclusion of "evidence of crimes of which the defendant had been acquitted in prior prosecutions." *Keller, supra*, 624 F.2d at 1157, 1160. In cases decided prior to the 1970 *Ashe v. Swenson* decision, the Third Circuit had consistently invoked the "[collateral estoppel] doctrine to bar the evidentiary use of crimes for which a defendant had been acquitted." 624 F.2d at 1160. *See United States v. Simon*, 225 F.2d 260 (3rd Cir.1955) and *United States v. DeAngelo*, 138 F.2d 466, 468 (3rd Cir.1943), *discussed approvingly in Keller, supra*, 624 F.2d at 1157–58. In *DeAngelo* the court reasoned:

> The conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy. Even though there has been no former acquittal of the particular offense on trial, a prior judgment of acquittal on related matters had been said to be conclusive as to all that the judgment determined.

*DeAngelo, supra*, 138 F.2d at 468, *quoted in Keller, supra*, 624 F.2d at 1157. The court in *Keller*, citing its earlier decision in *United States v. Venable*, 585 F.2d 71 (3rd Cir.1978), ruled that *Ashe* did not undermine the defensive use of collateral estoppel in subsequent criminal prosecutions as a means of precluding litigation of evidence that was the subject of a prior acquittal. *Keller, supra*, 624 F.2d at 1158–59, *citing Venable, supra*, 585 F.2d at 76–78.

More specifically, the *Keller* court ruled that the United States was precluded from introducing evidence of subsequent crimes to prove predisposition to rebut defendant's anticipated entrapment defense, where the defendant had previously been acquitted of those subsequent crimes. The court reasoned that the admission of such evidence would eviscerate the prior jury's acquittal verdict and force the defendant to relitigate issues which had previously been determined in his favor. 624 F.2d at 1159–60.

In reaching its conclusion, the court explicitly noted that not all of the lower federal courts follow its broad interpretation of collateral estoppel. 624 F.2d at 1157 n. 3. It observed, however, that "[the two] circuits which have considered whether the constitutional scope of double jeopardy now incorporates a prohibition against the evidentiary use of crimes for which the defendant was previously acquitted have held that it does." 624 F.2d at 1159, *citing United States v. Mespoulede*, 597 F.2d 329 (2nd Cir.1979) and *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir.1972). *See also United States v. Day*, 591 F.2d 861, 868–69 (D.C.Cir.1978). The Third Circuit did not reach the issue of whether preclusion of such evidence was constitutionally mandated, as it found that the doctrinal defense of collateral estoppel, as outlined in its earlier decisions in *Simon* and *DeAngelo*, was sufficiently broad to govern the case at bar. 624 F.2d at 1159–60. Noting that the trial court had allowed the introduction of evidence of crimes for which the defendant had previously been acquitted, the *Keller* court reversed the defendant's conviction and remanded the case for further proceedings. *Id.* at 1160.

### C

■ These decisions make abundantly clear that when collateral estoppel is invoked as a defense in a subsequent criminal prosecution, it is irrelevant that the government need not at the second trial prove the prior crime beyond a reasonable doubt. It is the relitigation of facts and issues previously decided in the defendant's favor and the accompanying harassment of citizens that precludes the reintroduction of evidence of crimes of which a defendant has been acquitted. Some examples will serve to demonstrate the reasoning of the courts that have faced this issue.

In *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir.1972), the petitioner was tried for the robbery of a small store. At trial, the prosecutor presented evidence to show that the petitioner had committed four other robberies of small stores, for the purpose of showing the defendant's alleged "course of conduct." 464 F.2d at 210; Fed.R.Evid. 404. The defendant objected at trial and

argued that such evidence was inadmissible, since he had previously been *acquitted* of two of the four robberies put into evidence by the prosecution. The trial judge denied the defendant's motion to strike the evidence and the defendant was convicted.

The Fifth Circuit found the trial court erred in admitting evidence of crimes of which the defendant had been acquitted. The court found it irrelevant that the evidence was used merely to establish an "evidentiary fact" (course of conduct) rather than an ultimate fact necessary to the defendant's conviction. 464 F.2d at 213–14. The court stated:

We hold that under *Ashe* where the state in an otherwise proper prosecution seeks *for any purpose* to relitigate an issue which was determined in a prior prosecution of the same parties, then the evidence offered for such a relitigation must be excluded from trial and *the state must be precluded from asserting that the issue should be determined in any way inconsistent with the prior determination.*

*Id.* at 215 (emphasis supplied). The court continued:

It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign had concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime.

*Id.* The Fifth Circuit's reasoning and conclusion was cited approvingly in the Third Circuit's more recent decision in *United States v. Keller, supra,* 624 F.2d at 1159.

Similarly, in *United States v. Mespoulede,* 597 F.2d 329 (2nd Cir.1979), the Second Circuit precluded the relitigation of issues decided in the defendant's favor in a prior criminal proceeding, even though "failure to prove the prior criminal acts beyond a reasonable doubt would not preclude a conviction [in the second trial]." 597 F.2d at 335. In that case, the government introduced evidence at a second jury

trial that the defendant possessed cocaine on January 31, 1978, even though another jury had previously decided that the defendant did not possess cocaine on that date. The Circuit reversed the defendant's conviction, reasoning that the second trial "place[d] an unjust burden on [the] defendant to relitigate the very issue a jury decided in his favor." *Id.* at 334. The court reasoned:

Although we can never know how much weight the evidence of possession on January 31 carried with the second jury, from the standpoint of the double jeopardy clause the key fact is that [the defendant] was subjected to a second risk of conviction for his actions on January 31. No less that at the first trial, [the defendant] had to confront an assertion that he possessed cocaine on that date.

*Id.* at 335.

The conclusions of these courts in other circuits rely in turn on two precedents of our own circuit court in *United States v. Simon,* 225 F.2d 260 (3rd Cir.1955), and *United States v. DeAngelo,* 138 F.2d 466, 488 (1943). *Simon* and *DeAngelo,* recently reaffirmed in *Keller, supra,* 624 F.2d at 1127–30, reveal the strong and consistent proscription in this circuit against forcing defendants under any circumstances to relitigate matters determined in their favor.

## IV

The government seeks to avoid the rule discussed above by emphatically urging the court that the controlling case in the court's decision is *United States v. One Assortment of 89 Firearms,* —— U.S. ——, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) *("Firearms")*. That case built on the foundation laid by the Court in its earlier decisions in *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam) *("Emerald Cut Stones")* and *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) *("Mitchell")*. The court will consider these cases to determine how, if at all, they impact on the instant case.

In each of these cases, the Supreme Court considered the preclusive effect of a prior criminal acquittal on a subsequent civil action brought by the government. In each case, the Court ruled that the later civil action is not barred by the prior acquittal. *Firearms, supra* (acquittal for dealing in firearms without a license does not preclude subsequent forfeiture proceeding); *Emerald Cut Stones, supra* (acquittal on smuggling charges does not bar a later forfeiture proceeding); *Mitchell, supra* (acquittal on criminal income tax charges does not bar a later assessment of a civil monetary penalty by the Internal Revenue Service). In each case, the Court allowed the government to relitigate matters decided in the defendant's favor in the prior criminal proceeding.

In all three of these cases, however, the Court allowed the subsequent action partly because of the clearly lower standard of proof in the subsequent civil proceeding and partly because the later proceeding was remedial rather than punitive in nature. Indeed, much of the analysis in each case focuses on whether the second action the government seeks to bring is in the nature of a criminal rather than a civil action. In *Mitchell,* the Court stated

> That acquittal on a criminal charge is not a bar to a civil action by the government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled.
>
> .    .    .    .    .
>
> Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting to punish criminally, for the same offense. The question for decision is thus whether [the

monetary penalty] imposes a criminal sanction.

303 U.S. at 397–99, 58 S.Ct. at 632–33. The Court in *Emerald Lot Stones* emphasized that "[i]f for no other reason, the forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because it involves neither two criminal trials nor two criminal punishments." 409 U.S. at 235, 93 S.Ct. at 492. *See also Firearms, supra,* 104 S.Ct. at 1105–07.

In each case, then, the Court has analyzed the subsequent proceeding brought by the government to determine whether it is punitive or merely remedial. In the case at bar, the subsequent proceeding is without question a criminal proceeding. Defendant, if found guilty of the charges in the indictment, will be subject to a fine and imprisonment under the express terms of 26 U.S.C. § 7201. This case is thus easily distinguishable from the cases cited by the government.[3] Certainly nothing in those cases is intended to erode the protections accorded criminal defendants in the Constitution and the doctrine of collateral estoppel. As the Second Circuit explained when invoking collateral estoppel to preclude the relitigation of decided facts in a subsequent criminal prosecution:

> This is not a situation in which the second suit is civil in nature, where the defendant faces sanctions or penalties of quite a different order than those he escaped through acquittal on criminal charges. Here, [the defendant] is once again faced with criminal sanctions that, realistically, may be imposed in large part because the second jury is persuaded that he [was guilty of the earlier crime].

> The Government must still prove every element of the offense beyond a reasonable doubt though not to a mathematical certainty. The settled standards of the criminal law are applicable to net worth cases just as to prosecutions for other crimes.

*Holland v. United States,* 348 U.S. 121, 138, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *see also United States v. Hall,* 650 F.2d 994, 997–98 (9th Cir.1981).

**3.** Throughout this and the previous discussion the court has assumed without deciding the government's burden of showing "likely source" of income is somehow qualitatively different than its burden of proving all other elements in a criminal case. In light of its conclusion that the precedents cited by the government are inapposite, the court need not rule on this question. The court notes, however, that the following language in *Holland* renders the government's position questionable at best:

*United States v. Mespoulede*, 597 F.2d 329, 335 (2nd Cir.1979).

## V

Turning to the case at bar, the court initially notes that in *United States v. Mock*, 604 F.2d 341 (5th Cir.1979) ("Mock I"), *aff'd after remand*, 640 F.2d 629 (5th Cir.1981) ("Mock II"), the Fifth Circuit was presented with facts analagous to the situation at bar. The defendant had been acquitted at his first trial of conspiring to import marijuana from Columbia, South America, between January and June 1972. After the acquittal, the government brought a second indictment, this time for tax evasion. Using the "net worth" theory, the government presented evidence at the tax evasion trial to show that defendant's "likely source of income," 604 F.2d at 345, was from the conspiracy of which he was acquitted at the first trial. The trial judge allowed the testimony and the defendant was convicted.

The Fifth Circuit reversed the conviction, finding that the trial court erred in allowing evidence of a crime for which the defendant was acquitted. The court reasoned:

It matters not that appellant's acquittal on the conspiracy charge does not negate the possibility that he may otherwise have derived income from the sale or distribution of marijuana. The fundamental error here is that the government reintroduced the identical facts and theory of the facts which were rejected at the first trial. For purposes of any subsequent prosecution of appellant, appellant's acquittal has conclusively established that appellant did not participate in a marijuana conspiracy with Alvarez and the others mentioned by Kilgore dur-

ing the time frame of the first indictment—January to June, 1972. Consequently, the government is barred from arguing or trying to establish, for any purpose, that appellant was part of that conspiracy.

*Mock I, supra*, 604 F.2d at 345–46.[4]

Similarly, the court believes that the government must be precluded from relitigating defendant's involvement in a criminal enterprise of which he has already been acquitted. Materials from the prior trial indicate that the government's theory as it relates to Crispino was that he participated with his codefendants in their narcotics smuggling operation, primarily as a ship's mechanic, and sometimes received or handled large sums of illicit cash. Crispino took the stand, vigorously denied his involvement in or knowledge of the enterprise, and testified at length about his personal finances. At the end of the trial, the jury rejected the government's theory by acquitting Crispino of all charges.

Whether or not the jury was correct in its determination is not the issue at this point, nor can it be. For whatever reason, after a lengthy trial the jury determined that although several of Crispino's codefendants were guilty of involvement in the alleged smuggling and distribution operation, Crispino and several others were not. The mixed verdict itself further demonstrates that the jury carefully weighed the government's "facts and theory of the facts," *Mock I, supra*, as they apply to each of the defendants. The government simply may not do what it proposes, *i.e.*, put the defendant at risk a second time for matters already resolved in his favor.

**4.** The subsequent disposition of the case in *Mock II* further demonstrates the scope of collateral estoppel. After the case was remanded to the district court, defendant was tried again for tax evasion. At trial the government introduced evidence that the defendant was involved in drug smuggling in December 1972. The trial judge admitted the evidence and the defendant was convicted. This time the Fifth Circuit upheld the conviction, finding that the narcotics conspiracy of which the defendant was original-

ly acquitted extended only from January to June 1972. The court reasoned that this later involvement with narcotics had not previously been litigated and that the doctrine of collateral estoppel therefore did not apply. *Mock II, supra*, 640 F.2d at 631.

Similarly, if the government in the case at bar sought to introduce evidence about matters not previously litigated, collateral estoppel would not bar that evidence.

The court's decision in this matter is strongly bolstered by its conclusion that the government, disappointed by the results in the first trial, has simply polished and refined its evidence *from that trial* in an effort to find some way, *any* way, of convicting this defendant of criminal charges.[5] A fundamental tenet of Fifth Amendment protection is that the government may not use the first trial as a "dry run for the second prosecution," *Ashe v. Swenson, supra,* 397 U.S. at 447, 90 S.Ct. at 1196, thereby forcing a defendant to "run the gauntlet" twice. *Id.* at 446, 90 S.Ct. at 1195, *quoting Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957). Yet this sort of harassment is precisely what the government proposes and the Fifth Amendment forbids. *Ashe, supra,* 397 U.S. at 447, 90 S.Ct. at 1196; *United States v. Keller, supra,* 624 F.2d at 1158.

In music or athletics, there is much to be said for practicing until one "gets it right." Fortunately, the Fifth Amendment and the doctrine of collateral estoppel do not allow federal prosecutors the same luxury with regard to successive criminal prosecutions.

### VI

The government has unambiguously represented that the evidence of drug trafficking it seeks to relitigate is evidence of the same transactions for which defendant was previously indicted, tried and acquitted. The court will therefore deny the government's motion *in limine* to introduce such evidence at trial. Defendant's motion will be denied insofar as it seeks to dismiss the indictment in its entirety, and granted insofar as it seeks to preclude the relitigation of the transactions of which the defendant was previously acquitted.

An appropriate order will be entered.

### ORDER

This matter having come before the court on the 25th day of April, 1984; and

The court having considered the submissions and arguments of the parties; and

For the reasons stated in the court's opinion filed this date,

It is on this 29th day of May, 1984, hereby ORDERED:

1. The motion *in limine* by the United States to introduce evidence of defendant's involvement in the drug transportation business to establish a likely source of defendant's unreported taxable income is DENIED; and

2. Defendant's motion to dismiss the indictment is DENIED insofar as it seeks to dismiss the indictment in its entirety, and GRANTED insofar as it seeks to preclude the relitigation of transactions of which the defendant was previously acquitted.

No costs.

---

5. The following colloquy at oral argument on these motions demonstrates the government's position:

> The Court: So we are dealing with the same subject matter that it was over in New York, aren't we.
> Ms. Hochberg: We are dealing with the same evidence but being used for an entirely different purpose.
> The Court: Okay. It's the same evidence.
> Ms. Hochberg: Actually additional evidence, stronger evidence.
> The Court: Okay.
> Ms. Hochberg: There will be people who will testify who didn't testify in New York and make it crystal clear the defendant was involved in drug trafficking.

(Transcript of Oral Argument, April 25, 1984, at page 21.)