UNITED STATES of America

v.

Kerby K. KELLER, Appellant.

No. 79–1792.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 1980.

Decided May 23, 1980.

Carmen C. Nasuti (argued), Nasuti & Miller, Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Thomas J. McBride (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before HUNTER, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Appellant, Kerby Keller, was indicted on January 25, 1979, along with four co-defendants, on a charge of conspiracy to distribute Phencyclidine Phosphate (PCP), a Schedule II, non-narcotic controlled substance, in violation of 21 U.S.C. § 841. The conspiracy allegedly ran from October 18 to October 21, 1977. After a four-day jury trial Keller was found guilty and sentenced to a term of three years' imprisonment. On appeal, Keller attacks the ruling of the trial court permitting cross-examination of Keller as to his participation in drug transactions which took place subsequent to October 21, 1977 and for which Keller had previously been tried and acquitted.

At the trial which is the subject of this appeal, the Government presented evidence that on or about October 18, 1977 one of the co-defendants telephoned John Anderson, a Government informant, from New York, seeking two pounds of PCP from Anderson, who lived in Atglen, Pennsylvania. Appellant Keller, along with another co-defendant, delivered the PCP to Anderson on October 20, 1977. On October 21, 1977, two other co-defendants arrived at Anderson's home in Atglen and picked up the PCP.

Appellant did not deny his participation in the conspiracy. Rather, his defense was entrapment. Keller testified that Anderson had been a good friend of his for several years and that he was concerned about Anderson's medical and serious financial problems.[1] Keller testified it was Anderson

---

1. The testimony was as follows:

Q. O.K. Did you know John Anderson at that time?
A. Yes, I did.
Q. And were you friends?
A. Yes, we have been friends for several years.
Q. How many years?
A. Since about 1970.
Q. In what way if any did you consider your relationship with him?
A. Well, it was a good relationship. We had a lot of things in common.

who first mentioned the possibility of selling PCP so that Anderson "could make money to help pay his bills." Keller testified he did not agree to Anderson's suggestion the first time it was made, and "not the first couple of times he mentioned it." He testified that he finally agreed to participate after Anderson once again said "that he could really use the money." It was then that Keller brought the PCP to Anderson's house. Keller also testified that "I told [Anderson] that I didn't want anything [money] out of it and [Anderson] said that he could make approximately $2000 out of it."

The Government attempted to undermine Keller's entrapment defense by proving that Keller was involved in other instances of drug dealing. The Government questioned Keller about a drug conviction involving a conspiracy to distribute methamphetamine to which Keller pled guilty in 1977. That evidence is not challenged in this appeal. The Government also questioned Keller about drug transactions that took place after the events charged in the indictment. Over defense counsel's objection that the questioning was not limited in its reference to a time period, Keller was asked about his involvement in deliveries of methamphetamine. In response, Keller testified he delivered the drugs to Anderson on two or three occasions, and on four occasions he delivered them to a third party "to help Mr. Anderson" . . . "[b]ecause he got the money from it." The issue was further pursued by the Government in the course of its cross-examination of Keller, and when the defendant repeated that these transactions took place six or seven months after October 20, 1977, defense

counsel objected. The objection was overruled.

The transactions which were the subject of this cross-examination were the basis of a prior federal prosecution of Keller in which he was charged with distributing methamphetamines to Anderson and another individual on approximately five occasions in 1978. In that case, as in this one, Keller testified, admitted the distribution, and pleaded entrapment as a defense, claiming he was induced by Anderson, acting as a Government agent, to commit the crime. He was acquitted of all charges.

## II.

Appellant contends that the district court erred in allowing into evidence his allegedly criminal conduct which occurred subsequent to the period covered by the indictment. He bases his claim of error on three grounds:

1) Although appellant recognizes that when a defendant raises an entrapment defense, defendant's prior conduct and character become relevant to the issue of predisposition, *Sorrells v. United States*, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932), he claims that subsequent acts are inadmissible to show predisposition or intent. Appellant relies on this court's decision in *United States v. Boyd*, 595 F.2d 120 (3d Cir. 1978). There we held the Government could not rebut an anticipated entrapment defense by showing prior predisposition and intent through evidence of defendant's subsequent criminal activity. *Id.* at 126.

2) Appellant claims the evidence is inadmissible because the doctrine of collateral estoppel bars the evidentiary use of conduct for which defendant had been acquitted.

Q. O.K. Did there come a time when you learned about a problem, medical problem, that he was having?

A. Yes, he went into the hospital. His wife had problems getting to the hospital because she didn't drive. I took her to the hospital to see him a few times.

Q. And in the fall of '77, did you become aware of financial problems he was having?

A. Yes, I knew that for quite some time.

Q. He had been having financial problems for some time?

A. Yes.

Q. Now, what if anything did you learn about his financial problems?

A. Well, he had lost almost everything he had. He had a new Jeep. He lost that.

He had a tractor-trailer. He lost that.

He had a hunting camp in the mountains that they were going to sheriff and were going to sheriff his house.

He had a van that he bought he lost at the Credit Union where he worked.

3) Appellant contends the court abused its discretion in admitting the evidence because it was virtually irrelevant, since it led to an acquittal, and hence was far more prejudicial than probative. He claims that, therefore, it should have been excluded pursuant to Fed.R.Evid. 403.[2]

■ We hold that the evidence was barred under the doctrine of collateral estoppel. Accordingly, we need not reach appellant's other claims.

### III.

■ The doctrine of collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Although first developed in civil litigation, it has been an established rule of federal criminal law since at least 1916. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (citing *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916)). As the Court explained, the need for the application of collateral estoppel in criminal cases arose primarily because of the recent proliferation of overlapping and related statutory offenses from a single alleged criminal transaction. *Id.* at 445, n. 10, 90 S.Ct. at 1195. In *Ashe v. Swenson*, the Court found a constitutional basis for the collateral estoppel doctrine in the Fifth Amendment guarantee against double jeopardy, and thus applied the doctrine to the states for the first time.

■ In this court, the doctrine of collateral estoppel as applied in criminal cases has been used to bar not only reprosecution, which we use here as encompassing multiple or fragmented prosecutions, but also evidence of crimes of which the defendant had been acquitted in prior prosecutions. In *United States v. Simon*, 225 F.2d 260 (3d Cir. 1955), defendant had originally been acquitted on a count of having received stolen goods (turkeys). On retrial of a charge of guilty possession of stolen goods (the same turkeys), we held the acquittal precluded introduction of evidence by the admitted thief that he had delivered the turkeys to defendant. We viewed the case as presenting a simple problem of re-litigation of decided facts, and held that "the Government is estopped from relitigating in a second trial facts already determined in the first." *Id.* at 262. This holding followed this court's earlier decision in *United States v. DeAngelo*, 138 F.2d 466, 468 (3d Cir. 1943) where we said:

> The conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy. Even though there has been no former acquittal of the particular offense on trial, a prior judgment of acquittal on related matters has been said to be conclusive as to all that the judgment determined.

We recognize that not all of the courts have followed the interpretation of collateral estoppel as enunciated by this court.[3] The issue was avoided by the approach followed by the Seventh Circuit which, on facts similar to those presented in the case *sub judice*, held that the evidence of a July 14 sale of heroin, for which defendant was

---

**2.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**3.** *See, e. g., Oliphant v. Koehler*, 594 F.2d 547, 554–55 (6th Cir.), *cert. denied*, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979); *United*

*States v. Moore*, 522 F.2d 1068, 1078 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976) (prior acquittal evidence allowed in subsequent prosecution, collateral estoppel issue not discussed); *United States v. Kills Plenty*, 466 F.2d 240, 243 (8th Cir. 1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973). *But see United States v. Mespoulede*, 597 F.2d 329, 334–35 (2d Cir. 1979); *Wingate v. Wainwright*, 464 F.2d 209, 212–14 (5th Cir. 1972).

acquitted, should not have been admitted in a trial on the charge of selling heroin on July 17. The court did not rely on the doctrine of collateral estoppel but instead held that the evidence lost most of its relevance when the acquittal was taken into account. The trial court's admission of the evidence was an abuse of discretion because a balancing of the relevance of the proffered evidence against its potentially unduly prejudicial effect required exclusion. *United States v. Phillips*, 401 F.2d 301 (7th Cir. 1968).

The Supreme Court's decision in *Ashe v. Swenson* incorporating collateral estoppel into the constitutional protection against double jeopardy raises the question whether double jeopardy precludes the evidentiary use of crimes for which there has been a prior acquittal or applies only in situations of reprosecution. The fact paradigm of *Ashe v. Swenson* presented only the latter situation. In that case, the defendant was originally prosecuted and acquitted for robbing one of a group of poker players. Thereafter, he was prosecuted and convicted for robbing another of the poker players during the same robbery. The Supreme Court reversed the conviction, noting that the jury necessarily found in the first trial that the petitioner had not participated in the robbery. Therefore, the Government was precluded from relitigating that issue in a subsequent trial.

In this case the doctrine of collateral estoppel is raised not because of a prosecutorial attempt to fragment offenses but because of the evidentiary use of matters determined in the original proceeding. The rationale for the incorporation of collateral estoppel into the double jeopardy clause of the Fifth Amendment is based on the "well-established policy against harassment of an individual." *United States v. Standefer*, 610 F.2d 1076, 1092 (3d Cir. 1979) (en banc), *cert. granted*, 444 U.S. 1011, 100 S.Ct. 658, 62 L.Ed.2d 640 (1980). We have noted:

The justification for such an application grows out of the fifth amendment itself, which has as one of its objectives the protection of citizens from repetitive and harassing lawsuits brought by the government. Accordingly, the prosecution may not seek, through the device of separate trials on each count brought against a particular defendant, to repeat litigating the same basic issues until it is ultimately successful.

*Id.*

It might be possible to read *Ashe v. Swenson* as incorporating within the double jeopardy clause only that anti-harassment aspect of collateral estoppel which bars reprosecution since there is a qualitative difference between reprosecution and the broader scope of collateral estoppel as applied to the evidentiary use of prior acquittals in prosecutions involving different offenses. Note, *Expanding Double Jeopardy: Collateral Estoppel and the Evidentiary Use of Prior Claims of Which the Defendant Has Been Acquitted*, 2 Fla.State U.L.Rev. 511, 525 (1974). As long as the subsequent prosecution is not precluded by the double jeopardy clause, the anti-harassment function of collateral estoppel may lose much of its relevance since it is the requirement of standing trial which constitutes the forbidden harassment.

■ The distinction between the constitutional scope of collateral estoppel and its doctrinal scope was alluded to in our decision in *United States v. Venable*, 585 F.2d 71 (3d Cir. 1978). In that case defendant had been tried originally on an indictment alleging three counts of extortion and two counts of perjury. Defendant was found not guilty of the extortion counts but was found guilty of the perjury counts, on which the court granted a new trial because of the prosecutor's improper comments. Defendant's plea that the retrial was barred on the ground of double jeopardy and collateral estoppel was rejected by this court because there was no inconsistency between the earlier acquittal and the perjury charges being retried.[4] However, in the

4. In deciding whether an issue that the defendant wishes to foreclose from consideration in a second trial was necessarily determined in defendant's favor by a prior general verdict of

discussion we indicated that the constitutional scope of collateral estoppel was not necessarily coextensive with the collateral estoppel defense. In considering the effect of the constitutional doctrine of collateral estoppel as enunciated in *Ashe* on our earlier cases applying the collateral estoppel defense, we stated that "*Ashe* would entirely bar a retrial, when collateral estoppel effect is given to facts established in favor of the defendant which are necessary to sustain a conviction in a second prosecution." *Id.* at 78. Without the protection of the double jeopardy safeguard, "the defendant would be vulnerable to multiple prosecutions by a strategic severance of related counts." *Id.* at 76. We indicated, however, that collateral estoppel in the broad scope previously enunciated in the earlier decisions of *United States v. DeAngelo*, 138 F.2d 466 (3d Cir. 1943), and *United States v. Simon*, 225 F.2d 260 (3d Cir. 1955), continues to apply in appropriate cases. "[The *DeAngelo* and *Simon* cases] retain their vitality, however, to the extent that they would allow the *defense* of collateral estoppel to be raised in a second proceeding as to facts previously established but not *necessary* to sustain the conviction sought at retrial." *Id.* at 78 (emphasis in original).

Two circuits which have considered whether the constitutional scope of double jeopardy now incorporates a prohibition against the evidentiary use of crimes for which the defendant was previously acquitted have held that it does. In *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972),

the court declined to limit the scope of the double jeopardy clause to situations of reprosecutions or multiple punishment. The court stated:

> We do not perceive any meaningful difference in the quality of "jeopardy" to which a defendant is again subjected when the state attempts to prove his guilt by relitigating a settled fact issue which depends upon whether the relitigated issue is one of "ultimate" fact or merely an "evidentiary" fact in the second prosecution. In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial.

*Id.* at 213–14.

The Second Circuit has now followed the Fifth Circuit's analysis, holding also that in a subsequent trial the state must be precluded from evidentiary use of the prior conduct which was the subject of the prior acquittal. *United States v. Mespoulede*, 597 F.2d 329 (2d Cir. 1979).

Although there are intimations in the *Ashe* opinion that constitutional incorporation of collateral estoppel is not limited to instances of reprosecution or multiple prosecution,[5] we believe it is unnecessary to

---

acquittal, courts are to apply the doctrine of collateral estoppel not "with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). The Court explained that "[w]here a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Id.* (quoting Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions*, 74 Harv.L.Rev. 1, 38–39 (1960)).

In *Venable* we undertook this analysis and concluded that the retrial on the perjury charge did not call for the relitigation of any facts previously decided in defendant's favor in the prior trial. *See also United States v. Castro-Castro*, 464 F.2d 336 (9th Cir. 1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973). (Evidence introduced in trial leading to acquittal properly reintroduced in second trial, court finding fact which defendant sought to bar was not previously determined in defendant's favor by acquittal verdict).

5. The Court defined collateral estoppel broadly:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate

decide this constitutional issue under the facts of this case.[6] For even if *Ashe v. Swenson* were limited to a holding that the double jeopardy clause of the Constitution incorporates collateral estoppel only insofar as it applies to reprosecution, there has been no suggestion that the decision would in any way curtail the use of the collateral estoppel doctrine as previously applied in criminal cases. Since this court has consistently applied that doctrine to bar the evidentiary use of crimes for which a defendant had been acquitted, application of collateral estoppel in this broader context would still mandate reversal in this case because the evidence of conduct which was the subject of Keller's prior acquittal was introduced in violation of that doctrine.

The Government argues, however, that this case is distinguishable from the situations previously before this court because Keller did not deny the fact of his participation in the drug distributions but claimed that he was excused from criminal prosecution because he was entrapped. The Government contends that collateral estoppel is inapplicable because "[i]t is not the *result* of the prior case that was material, but rather the *facts* which were undisputed." Government Brief, page 11. Thus, the Government would have us hold that the prior conduct is admissible notwithstanding the determination by the earlier fact finder that the defendant's state of knowledge and level of participation did not satisfy the requirement of the criminal law. *See United States v. Phillips*, 401 F.2d at 305. We decline to so hold since that would eviscerate the effect of the prior acquittal. We agree with the Fifth Circuit that "[i]t is

fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit." *Wingate v. Wainwright*, 464 F.2d at 215. The Government position "places an unjust burden on a defendant to require him to relitigate the very issue a jury decided in his favor." *United States v. Mespoulede*, 597 F.2d at 334.

Accordingly, we will reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

---

fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson*, 397 U.S. at 443, 90 S.Ct. at 1194. The Court's definition, never fully discussed, could be interpreted to mean that the Court intended to bar *any* use in subsequent prosecutions of evidence previously determined in defendant's favor by a prior verdict of acquittal. For the view that the court's holding was much more limited, see Note, *Expanding Double Jeopardy: Collateral Estoppel and the Evidentiary Use of Prior Crimes of Which the*

*Defendant Has Been Acquitted*, 2 Fla.State U.L. Rev. 511 (1974).

**6.** There will undoubtedly be future cases in which a determination must be made as to the coextensiveness of constitutional collateral estoppel and doctrinal collateral estoppel. It may arise when plain error is asserted, when it is raised in habeas corpus as distinguished from direct appeal, or in consideration of the scope of the applicability of collateral estoppel to the states. None of these circumstances are presented by the facts or procedural posture of this case.