**UNITED STATES of America**

v.

**Cathy Lynn RODERICK, a/k/a Cathy L. Willey Peggy Yatsko, a/k/a Helen B. Farmer.**

**Crim. No. 85–104.**

United States District Court, W.D. Pennsylvania, Criminal Division.

Nov. 27, 1985.

Bradley Barbin, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

Thomas S. White, Asst. Federal Public Defender, Pittsburgh, Pa., for Roderick.

W. Penn Hackney, Pittsburgh, Pa., for Yatsko.

## OPINION

SIMMONS, District Judge.

In this four count indictment, both of the Defendants Cathy Lynn Roderick and Peggy Yatsko, are charged in Count One with unlawfully possessing a stolen United States Treasury check, in violation of 18 U.S.C. §§ 1708 and 2; Count Two of the indictment charges the Defendant Peggy Yatsko with the uttering and publishing of that check in violation of 18 U.S.C. § 495. Count Three of the indictment charges the Defendant Cathy Roderick with possessing a stolen United States Treasury check in violation of 18 U.S.C. § 1708; and Count 4 charges the Defendant Roderick with the

uttering and publishing of that check in violation of 18 U.S.C. § 495.

The Defendant Cathy Roderick has filed a Motion to Suppress Identification Evidence and a Motion to Dismiss the Indictment, the Motion to Dismiss the Indictment was later amended by the Defendant Roderick on July 2, 1985. Defendant Peggy Yatsko has moved to suppress identification evidence. Hearing and argument on all of the pre trial motions was held before this Court on June 28, 1985 and August 2, 1985, the transcripts of those hearings have been filed, all of the parties have submitted briefs in support of their respective positions, and the motions are now ready for decision by this Court.

RODERICK'S MOTION TO DISMISS AND AMENDED MOTION TO DISMISS

The Motion to Dismiss and the amended Motion to Dismiss allege that the above-captioned indictment violates the double jeopardy clause of the United States Constitution, that it is a vindictive prosecution, and finally, that the present prosecution constitutes preindictment delay.

On March 13, 1984, the Defendant Cathy Roderick was charged in a six count indictment, filed in the United States District Court for the Western District of Pennsylvania at Criminal Number 84–47, with violations of 18 U.S.C. §§ 495 and 1708, which allegedly occurred in 1982. On July 12, 1984, that case proceeded to trial before the Honorable Judge Cohill, who on July 14, 1984, granted the Defendant's motion for mistrial. The mistrial was based on the finding by Judge Cohill that a prejudicial hearsay statement about the Defendant Roderick's prior criminal record was made by a government witness in the presence of the jury, and that a cautionary instruction to disregard that testimony would be ineffective. (Tr. of Jury Trial, July 12–16, Docket Number 27 of Criminal Number 84–47, at 163–173). Judge Cohill later found that there was no prosecutorial misconduct on the part of the Assistant United States Attorney. (Tr. October 10, 1984, at 25). A retrial of that case was scheduled for October, 1984, and prior to the retrial,

Ryan Kennedy, the Assistant United States Attorney, approached the defense concerning a possible plea to an uncharged offense which is now the subject of the above-captioned case, in exchange for the dismissal of the counts at Criminal Number 84–47. With respect to the offense charged in Counts 3 and 4 of the above-captioned indictment, Kennedy testified at the suppression hearing held before this Court on June 28, 1985, that he received information from a Postal Inspector in October of 1984 that a check of approximately $1400 had been presented to a furniture store in Washington, Pennsylvania, and the operator of that store identified the Defendant Cathy Roderick as being the person who presented the check without the authorization of the payee. (Tr. 17–18).

Kennedy did not recall discussing any laboratory reports with the Postal Inspector prior to the time he approached the Defendant's attorney concerning this possible plea bargain. (Tr. 21). Kennedy suggested that if the Defendant plead guilty to that uncharged offense, a plea bargain could be worked out with respect to the counts which were then presently charged. However, the Defendant continued to maintain her innocence and declined to plea at that time.

A plea bargain was later reached with respect to the charges filed at Criminal Number 84–47, and the Defendant Roderick entered a guilty plea to Counts 1 and 5 of that indictment in November, 1984. Kennedy informed defense counsel that the investigation of the $1400 check involved with the Weber Furniture Company would continue. (Tr. 25).

The Defendant Roderick was sentenced November 8, 1984 on Counts 1 and 5 of the indictment at Criminal Number 84–47, for a period of six months, to run concurrently with a state sentence that the Defendant was then serving, and Counts 2, 3, 4 and 6 of that indictment were thereafter dismissed. Defendant Roderick finished serving the federal sentence on April 7, 1985.

The above-captioned indictment was filed on May 2, 1985, and charges the Defendant

Roderick with violations of 18 U.S.C. §§ 2, 495 and 1708, which allegedly occurred in April and May of 1984, approximately two months after the indictment at Criminal Number 84–47 was filed on March 13, 1984. The charges contained in the indictment previously filed at Criminal Number 84–47 pertain to violations of 18 U.S.C. §§ 495 and 1708 which occurred in April, August and September of 1982. Counts 3 and 4 of the present indictment pertain to the discussion of the then uncharged alleged misconduct that Kennedy discussed with Defendant Roderick and her counsel while she was awaiting retrial on the charges at Criminal Number 84–47.

The Defendant contends that the government's conduct in delaying prosecution on Counts 3 and 4 of the present indictment, and in bringing the additional charge contained in Count 1 of the indictment, constitutes vindictive prosecution which requires the dismissal of the present indictment. Defendant cites *United States v. Krezdorn*, 718 F.2d 1360 (5th Cir.1983), *cert. denied*, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 in support of this motion. In *Krezdorn*, the Defendant was convicted on four of five counts of forging signatures on border crossing applications, but the Fifth Circuit reversed that conviction, holding that it was reversible error for the trial court to have admitted evidence of forged border crossing applications which were not charged in the indictment. Upon remand, the Defendant was reindicted on the four counts upon which he had previously been convicted, and Krezdorn was also indicted for conspiracy to forge immigration documents. The forgeries in the substantive counts were charged to be overt acts in furtherance of the conspiracy. The new conspiracy charge increased the potential penalties under the four original counts by five years of imprisonment and $10,000 in fines. The *Krezdorn* Court held that there was no prosecutorial vindictiveness involved, and set forth the following standard:

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in *Hardwick* that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion.

718 F.2d at 1365.

The *Krezdorn* Court ultimately concluded that the prosecutor's actions were taken to pursue a course indicated by the appellate opinion rather than to penalize the defendant for exercising his right of appeal, and that the additional charge would not result in Defendant receiving a greater sentence that that which was originally imposed.

■ In the instant case, the conduct which was charged in the above-captioned indictment could not have been charged in the indictment previously filed at Criminal Number 84–47, since the alleged offenses in the above-captioned indictment did not occur until after the indictment at Criminal Number 87–47 had been filed. This is un-

like the situation in *Krezdorn* where the superseding indictment which charged the conspiracy could have been included in the initial charges. Here there was nothing which had occurred since the time of the original charge which would alter the initial exercise of the prosecutor's discretion, and a presumption of vindictiveness would not apply.

■ Although the Defendant refused to plea bargain, the bringing of additional charges after the refusal to plea bargain does not constitute vindictive prosecution. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Allsup*, 573 F.2d 1141 (9th Cir.), *cert. denied*, 436 U.S. 961, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978); *United States v. Heldt*, 745 F.2d 1275 (9th Cir.1984). A prosecutor's decision to charge a defendant with a certain offense "does not impose an improper 'penalty' on a defendant unless it results from the defendant's exercise of a protected legal right, as opposed to the prosecutor's normal assessment of the societal interests to be vindicated by the prosecution." *United States v. Taylor*, 749 F.2d 1511 (11th Cir.1985). An increase in charges after a threat by a prosecutor to increase the charges against a defendant who refuses to plead guilty after a mistrial on the original indictment does not constitute prosecutorial vindictiveness. *United States v. Mays*, 738 F.2d 1188 (11th Cir. 1984).

Here, the government advised the Defendant before she entered the guilty plea at Criminal Number 84–47 that it intended to pursue the matter which resulted in the subsequent charges being filed. The above-captioned indictment was not brought to deter the defendant from the exercise of her legal rights, nor was it brought to deter or punish her for an appeal. The government did not delay any charges which could have been brought at the time the indictment was filed at Criminal Number 84–47, nor did it vindictively bring the additional charges in the above-captioned case. The Defendant was never prosecuted for an additional offense follow-ing a successful appeal on the first offense. There is no objective evidence to indicate that the purpose of the above-captioned charges was to punish the defendant for exercising her legal rights.

■ The Defendant contends that a presumption of vindictiveness exists because the Defendant was unnecessarily detained by the United States Marshal's office after being released on an OR bond, because her ability to serve a state sentence was interfered with, and because she experienced problems with receiving public assistance and medical treatment. All of these events occurred after the above-captioned indictment was filed. Although there was a delay in processing the Defendant at the Marshal's office, and the ability of the Defendant to serve her state sentence was interfered with by the fact that the above-captioned case was brought against the Defendant, it does not appear that there was any vindictive motive on the part of the Government at the time the indictment was filed. The decision to bring the above-captioned indictment did not result from the fact that Defendant exercised a protected legal right. There is also no indication in the record that the government requested Defendant's physician to stop treating the Defendant, or that the United States ever arbitrarily interfered with Defendant's welfare check.

The Defendant also contends that this indictment violates the double jeopardy clause and that the United States had a duty to bring all of the charges at the same time, since it knew of the additional charges prior to the disposition of the matter at Criminal Number 84–47. Defendant also claims that the instant action violates fundamentals of fairness and is therefore a violation of Defendant's due process; and that the delaying of the prosecution of the present charges is prejudicial to Defendant's Sixth Amendment right to a speedy trial.

The double jeopardy clause prohibits repeated attempts to convict an individual for an alleged offense through a series of prosecutions. *Ashe v. Swenson*, 397 U.S. 436,

90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The double jeopardy clause prevents a person from being twice put in jeopardy and protects against the risk that an accused for a second time will be convicted of the same offense for which he was initially tried.

■ Here the Defendant previously plead guilty to possessing two United States Treasury checks in April and September of 1982. Although the defendant is also charged here with possessing United States Treasury checks, the misconduct alleged occurred in April and May of 1984. The above-captioned case does not arise from the same factual situation presented in the case previously brought at Criminal Number 84–47, and there is not a period of continuous and uninterrupted conduct flowing from the 1982 alleged misconduct, since nearly two years separate the misconduct alleged in the above-captioned case from the misconduct involved in the case filed at Criminal Number 84–47.

Defendant cites *United States v. Keller*, 624 F.2d 1154 (3d Cir.1980), as standing for the proposition that the Third Circuit disfavors multiple or fragmented prosecutions. *Keller*, however, was concerned with the doctrine of collateral estoppel in a criminal case where there was an evidentiary use of matters which were determined in the original proceeding; that is not the case here. The above-captioned case does not present a situation where there will be a relitigation of decided facts, hence *Keller* is inapplicable and the double jeopardy clause does not bar the above-captioned action. Likewise, there has been no violation of the Defendant's due process rights.

With respect to the issue of preindictment delay, the Defendant contends that the present charges should have been brought in the time span between the first trial and the guilty plea to the charges at Criminal Number 84–47, and that due to the government's delay in bringing the above-captioned indictment, a period of eight months elapsed. However, the United States Attorney testified that it was necessary to investigate the case at the time when the Defendant denied all of the charges, and he continued to investigate the matter after the November 8, 1984 plea in the matter at Criminal Number 84–47. Kennedy also testified that at this time he had not received a report from the Postal Inspector, and did not receive the prosecutive report until around December 21, 1984. The Defendant was also informed at the time she plead guilty at Criminal Number 84–47 that the investigation would continue with respect to the offense which is now charged in the above-captioned case. Under these circumstances, there has been no actual prejudice to the Defendant. The Motion to Dismiss will be denied.

### RODERICK MOTION TO SUPPRESS IDENTIFICATION EVIDENCE

The Defendant has moved to suppress the eyewitness identification of the Defendant made by Mr. Abe Weber of the Weber Furniture Store, claiming that the procedures utilized were unduly suggestive and would lead to a substantial likelihood of misidentification, all in violation of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The evidence presented at the suppression hearing consisted of the testimony of two witnesses, Janet Mondin and Abe Weber. The testimony of Janet Mondin, a clerk at the Weber Furniture Store, established that she knew Cathy Roderick from engaging in previous business transactions with Roderick at the furniture store. Mondin saw Defendant Roderick on May 30, 1984, the date of the misconduct alleged in Counts 3 and 4 of the above-captioned indictment. Mondin testified she remembered Defendant's face, and although it had been a year or so since she had last seen Roderick, she had previously seen Roderick at least once a month on a regular basis because Roderick had a running account at the furniture store. Tr. August 2, 1985, at 48–52.

Mondin testified that later on May 30, 1984, the police came, but she was not shown any photographs or asked to give any description at that time. (Tr. 58–59).

Mondin was shown the photo spread, Government Exhibit A, on April 23, 1985, was asked if she knew anyone in it, and Mondin then selected Cathy Roderick and her sister Peggy Brown. Mondin testified that she did not do any elimination but identified the Defendant Roderick because she recognized her photograph. Tr. 61–163. The photos did not indicate the height or weight of the persons or indicate when they were taken, according to Mondin, and she testified that she was absolutely positive of the identification. Tr. 65. Mondin picked photo number one of Government Exhibit A as the Defendant Cathy Roderick, and photo number five as Roderick's sister, and the identification was made without Mondin being told that Roderick's photo was included among those in the photo spread. Mondin was never shown any other photo spreads. Tr. 65, 67, 74.

Mr. Abe Weber, the owner of Weber Furniture, also testified that Cathy Roderick bought merchandise from his store, made payments for a while, and then quit paying. Weber testified that he knows Roderick when he sees her because she came in every month for two years. (Tr. 86).

The photo spread (Government Exhibit A), consists of color photographs of eight white females of the same approximate age. With the exception of one photograph, all photos include a frontal and side view. The hair length varies from short to long.

The photo spread was not impermissibly suggestive. The photos were all in color, similar in size, and were frontal and side views (with one exception, which was not the photograph of the defendant). The witness, Mondin, was not told that the Defendant's picture was contained in the photographic array, nor was her attention was directed to any one individual. The witness had the opportunity to view the Defendant Roderick on numerous prior occasions, and Mondin testified that she did not "eliminate" anyone, but merely picked out the Defendant. Finally, it was obvious that both Ms. Mondin and Mr. Weber knew the Defendant prior to the time she cashed the check in question, and had ample opportunity to observe her on those prior occasions. Under the totality of the circumstances, this Court cannot say that the procedure was so suggestive or unreliable so as to create a substantial likelihood of misidentification. Defendant Roderick's Motion to Suppress Identification Evidence will be denied.

## YATSKO MOTION TO SUPPRESS IDENTIFICATION

The Defendant Peggy Yatsko has moved to suppress the identification testimony of Mary Jane Smith of the Pittsburgh National Bank in Washington, Pennsylvania, who was shown a photographic array on three occasions, contending that the photos as well as the procedures used created a substantial likelihood of misidentification. On April 3, 1984, Mary Jane Smith, a drive-in window teller for Pittsburgh National Bank in Washington, Pennsylvania, was presented a check payable to William Farmer by an individual purporting to be Helen Farmer, a passenger in a car at the drive-in window. The car containing "Helen Farmer" left while Ms. Smith was checking to determine if there was an existing account under that name. According to Smith, the individual purporting to be Helen Farmer (who was later identified to be the Defendant Peggy Yatsko), reminded Smith of a former neighbor. Tr. 93. Smith was within three feet of the individual on a clear day, had the opportunity to observe the passenger from the shoulders up, and spoke to her. Tr. 94–96. Smith described the passenger as having short, straight, reddish-brown hair, no glasses, and in her thirties. Tr. 96–97. Smith spoke to an Officer Popeck on the telephone, and described the Defendant to him as resembling a former neighbor, whom Smith and the police officer both knew. Tr. 98–100. Officer Popeck then came to the bank, and showed Smith a photo spread, which was repeated the following day by Postal Inspector O'Hara. Tr. 103. Smith picked the photograph of the Defendant on both occasions, and testified

that she was very certain of her identification. Tr. 104–106. She was also shown the photo spread on a third occasion, approximately a year later. Tr. 113. The pictures were spread out loosely in front of Smith, and she could not recall whether there was writing on the photos, although she assumed they must be pictures of persons who had been through the police system. Tr. 118–120. Smith said that she recognized Yatsko's picture as soon as she saw it.

Postal Inspector Michael O'Hara testified that he presented the photo array identified as Government Exhibit A to Smith on April 4, 1984. O'Hara obtained the pictures from the Washington Police Department, and had nothing to do with the selection of the pictures contained therein. Tr. 130–131.

■ In determining the reliability of eyewitness identification, this Court must apply the five-part test set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and examine the following factors: (1) opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) accuracy of the witness' prior description; (4) witness' level of certainty when identifying the suspect; and (5) the length of time between the crime and the confrontation.

■ Mary Jane Smith testified that she observed the passenger of the car for two or three minutes at the time of the crime, and in daylight. Smith testified that in all of her years of experience at Pittsburgh National Bank she had never seen the Farmer name, and was therefore suspicious from the beginning. Tr. 102. Smith described the passenger as having short, reddish-brown hair, a protruding mouth and a sharp nose, and as reminding Smith of a former neighbor. Tr. 96–98. This was a relatively accurate description of the Defendant under the circumstances. Additionally, Smith was absolutely certain that the person she identified was the person who had occupied the passenger seat. Moreover, Smith was shown the photo spread almost immediately after the incident happened, and the following day as well. The relatively short time between the crime and the photo spread reinforces the reliability of the identification. The photo spread itself was not unduly suggestive. Of the eight photographs shown, four were of individuals with short straight hair. The composition of the photo spread did not unduly focus attention on the Defendant Peggy Yatsko.

In the totality of the circumstances, there was no suggestiveness inherent in the photo array shown to Mary Jane Smith, and the identification was reliable under all of the circumstances. The Motion to Suppress will be denied, and an appropriate Order will be entered.