**UNITED STATES of America, Appellee,**

v.

**Salvatore SALAMONE, Appellant.**

**No. 87–5803.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) April 9, 1990.

May 9, 1990.

Rehearing and Rehearing In Banc Denied June 26, 1990.

James J. West, U.S. Atty., Albert J. Wicks, Asst. U.S. Atty., Karen Skrivseth, Atty. Appellate Section/Crim. Div., Dept. of Justice, Washington, D.C., for appellee.

David L. Kurtz, Lake Ariel, Pa., for appellant.

Before GREENBERG, SCIRICA, and SEITZ, Circuit Judges.

---

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This weapons case is before this court on remand from the Supreme Court following our previous opinion affirming the convictions of the appellant, Salvatore Salamone, on two counts but vacating his convictions on three other counts and remanding the case to the district court for further proceedings. *United States v. Salamone*, 869 F.2d 221 (3rd Cir.1989). Inasmuch as the circumstances of the case are fully set forth in our reported opinion, we will only highlight our earlier holdings, as reference may be made to that opinion for a more complete exposition of the history of the case.[1]

Salamone was indicted in the Pizza Connection case, *United States v. Badalamenti*, Crim. No. 84–236 (S.D.N.Y.1984), in the Southern District of New York on drug trafficking conspiracy and racketeering (RICO) counts, as well as conspiracy and substantive money laundering counts. At a jury trial, he was acquitted on the drug trafficking conspiracy and racketeering (RICO) counts, but convicted on the other counts. The drug trafficking conspiracy count alleged that in furtherance of the conspiracy Salamone purchased semi-automatic handguns, using the fictitious names James Hamilton and Randall Thomas, and also received certain rifles. The racketeering count charged that Salamone participated in a racketeering enterprise through the means and methods set forth in the drug trafficking conspiracy count.

In October 1984, before the *Badalamenti* trial, Salamone was charged with various firearms offenses in the Middle District of Pennsylvania in the indictment that has led to this appeal. The Middle District indictment included the following counts on which he was ultimately convicted: counts one and two, possession of an illegally made and unregistered machine gun; count four, conspiracy to violate the federal firearms laws by falsifying firearms transaction records; and counts five and six, falsi-

fying firearms transaction records. Prior to his trial in the Middle District, Salamone unsuccessfully moved to dismiss the indictment or, alternatively, to prohibit the introduction of evidence used in the *Badalamenti* trial relating to the firearms. Salamone predicated his motion on double jeopardy and/or collateral estoppel principles. On the prior appeal, we affirmed his conviction on counts one and two, relating to the machine gun, and, as the remand from the Supreme Court does not implicate those convictions, —— U.S. ——, 110 S.Ct. 830, 107 L.Ed.2d 826, we will not make further reference to them.

We, however, reversed Salamone's convictions on counts four, five and six, concerning falsifying firearms transaction records. While we found that his reprosecution was not on a constitutional double jeopardy basis precluded by *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), introduction of evidence originally produced at the *Badalamenti* trial violated "doctrinal" collateral estoppel principles, as explained in *United States v. Keller*, 624 F.2d 1154, 1158 (3rd Cir.1980). *Salamone*, 869 F.2d at 232. The barred evidence dealt with the circumstance that Salamone's brother and other persons had been at locations where weapons involved had been recovered and that telephone calls had been made among these locations. We concluded that the *Badalamenti* jury "necessarily decided that [Salamone] was *not* a member of the narcotics conspiracy at issue" in that case and thus had rejected "an inference from this testimony essentially indistinguishable from the one that the government desired the [Middle District] jury to draw." *Salamone*, 869 F.2d at 231. We regarded the situation as nothing more than "a veiled attempt to relitigate [Salamone's] involvement in the conspiracy" at issue in the *Badalamenti* case. *Id.* at 232. Thus, while the rejected evidence did not relate directly to an element of the offenses charged in the Middle District, its introduction was barred by doctrinal collat-

---

**1.** The case is here for the third time. *See United States v. Salamone*, 800 F.2d 1216 (3rd Cir. 1986).

eral estoppel. We determined that admission of the evidence was prejudicial and accordingly reversed. *Id.* at 233.

After our decision in *Salamone*, the Supreme Court decided *Dowling v. United States*, — U.S. —, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), *affirming*, 855 F.2d 114 (3rd Cir.1988). In *Dowling*, the situation was as follows. On July 8, 1985, a man wearing a ski mask, armed with a small pistol, robbed a bank in St. Croix. Dowling was arrested for the offense and charged with bank robbery. At his bank robbery trial, a witness, Vena Henry, testified that two weeks after the bank robbery Dowling, accompanied by Delroy Christian, had entered her house wearing a ski mask and carrying a small handgun. A struggle ensued during which Dowling was unmasked enabling Henry to identify him. Dowling was charged with burglary, attempted robbery, assault and weapons offenses arising from the Henry incident, but was acquitted at a jury trial before the bank robbery trial.

At the bank robbery trial, Henry was permitted to testify regarding the incident at her house, for the purposes of strengthening the identification of Dowling as the bank robber and to link him to Christian. The government theorized that Christian was to act as the driver of the getaway car in the bank robbery but was scared off by the police. The district court, however, told the jury that Dowling had been acquitted of the Henry offenses and that the evidence had a limited purpose under Fed. R.Evid. 404(b).

On appeal we held, relying on *United States v. Keller*, 624 F.2d at 1154, that the acquittal at the Henry trial collaterally estopped the government from offering evidence of the Henry incident at the bank robbery trial. 855 F.2d at 120–22. Furthermore, we determined that Henry's evidence was not admissible under Fed.R. Evid. 404(b), dealing with evidence of other crimes, because a defendant previously acquitted of an offense could not be found by a second jury to have been the actor in the earlier offense. *Id.* at 122. We also held that under Fed.R.Evid. 403, the danger of

unfair prejudice from admission of the evidence outweighed its probative value. *Id.* However, we affirmed the conviction, concluding that it was highly probable that Dowling had not been prejudiced by the error. *Id.* at 124.

The Supreme Court granted Dowling's petition for certiorari and affirmed, but not on the basis that the admission of Henry's evidence was harmless error. *Dowling v. United States*, 110 S.Ct. at 668. The Court assumed that Dowling's acquittal established that there was reasonable doubt as to whether he was the masked man who entered Henry's home. *Id.* at 672. However, it also pointed out that to introduce Henry's evidence, the government did not have to establish beyond a reasonable doubt that Dowling was the intruder in Henry's home. *Id.* Thus, as the jury might reasonably conclude that Dowling had entered the Henry home "even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral estoppel component of the Double Jeopardy Clause is inapposite." *Id.*

The Court supported its result with citations of cases holding that an acquittal in a criminal case does not preclude the government from relitigating an issue in a subsequent action governed by a lower standard of proof. *Id.* The Court then said that "for the same reasons we find no merit in the Third Circuit's holding that the common-law doctrine of collateral estoppel in all circumstances bars the later use of evidence relating to prior conduct which the government failed to prove violated a criminal law." *Id.* at 673.

The Supreme Court then set forth an alternative basis for the same result, as it indicated that even if it agreed with Dowling that the lower burden of proof at the second proceeding did not serve to avoid the collateral estoppel component of the Double Jeopardy Clause, the Henry evidence was nevertheless admissible because Dowling failed to demonstrate that his acquittal at the first trial represented a jury finding that he had not been an intruder in the Henry home. *Id.* The Court held that

it was Dowling's burden to demonstrate that the issue he sought to foreclose was actually decided in the first proceeding but that he had not done so, as the record did not demonstrate that identity was actually an issue at the first trial and was decided in Dowling's favor. *Id.* at 673–74. Finally, the Court rejected Dowling's argument that it was fundamentally unfair for Henry's evidence to be introduced. *Id.* at 674–75.

On January 16, 1990, the Supreme Court granted certiorari in *Salamone*, vacated our judgment, and remanded the case to us for further consideration in light of *Dowling*.[2] 110 S.Ct. at 830. We have received supplemental briefs and now conclude that our partial reversal cannot be reconciled with *Dowling*. Accordingly we will now affirm Salamone's convictions on all counts.

It is clear that our opinion in *Salamone*, though faithfully following the precedents of this court, suffered from the very flaw that the Supreme Court first identified in *Dowling*, as rendering both constitutional and doctrinal collateral estoppel inapplicable in that case. The evidence that Salamone's brother and other persons had been at locations where some of the weapons involved had been recovered, and that there had been telephone calls among these locations, under *Dowling* could properly be admitted and credited by the jury at the Middle District trial, regardless of the outcome of *Badalamenti*, because it did not have to be established beyond a reasonable doubt in the Middle District. The evidence itself, being detailed testimony from FBI agents who had conducted surveillance of various defendants and records of telephone calls, was highly reliable. Furthermore, under *Dowling*, there was no reason why the Middle District jury could not draw inferences from the testimony and conclude that Salamone was in fact a member of the conspiracy, even though the government had been unable to establish that point beyond a reasonable doubt at the *Badalamenti* trial.

We emphasize that the testimony regarding the observations from the surveillance and the telephone records was, as was the Henry evidence in *Dowling*, collateral to the elements of the offenses charged involving falsification of firearms transaction records. Thus, it cannot be said that the acquittal in *Badalamenti* determined an ultimate issue in this case. Rather, the evidence in *Salamone*, previously admitted in *Badalamenti*, was offered to prove that Salamone had a motive for falsifying the firearms transactions and to establish a link among the locations where the firearms were located, so that it did not appear that the weapons " 'dropped out of the sky.' " *Salamone*, 869 F.2d at 230–31.

In reaching our result, we have taken particular note of Justice Brennan's dissent in *Dowling* which helps to define the scope of the Court's opinion. 110 S.Ct. at 675. He indicated that he "would extend the collateral estoppel doctrine to preclude the Government from introducing evidence which relies on facts previously determined in the defendant's favor by an acquittal." *Id.* at 676–77. In an accompanying footnote, he described his proposed rule as relating to an " 'evidentiary fact,' " so as to distinguish it from the situation in *Ashe v. Swenson*, 397 U.S. at 436, 90 S.Ct. at 1199, where the prior acquittal determined "facts which were a necessary element of the second offense." 110 S.Ct. at 677 n. 1. Justice Brennan cited *United States v. Keller*, 624 F.2d at 1154, as an example of an evidentiary fact case but the principles of *Keller* were rejected by the Supreme Court in *Dowling*. Thus, *Keller* is no longer precedential in this circuit.

In the circumstances, our earlier opinion in *Salamone*, to the extent that it applied doctrinal collateral estoppel, simply cannot survive, as it cannot be reconciled with the burden of proof component of *Dowling*. Accordingly, our conclusion on the prior appeal, that the verdict in *Badalamenti* established that Salamone "was *not* a member of the narcotics conspiracy at issue," *Salamone*, 869 F.2d at 231, though

**2.** The petition granted was filed by the government. Salamone also filed a petition for certiorari but it was denied. —— U.S. ——, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989).

perhaps satisfying the identity of issues component of *Dowling*, is no help to Salamone.[3]

The judgment of conviction and sentence on counts one, two, four, five and six will be affirmed.

---

**3.** Salamone also asserts that the repeated evidence should have been excluded under Fed.R. Evid. 403 and that the fact that he was prosecuted in two districts was a violation of the Double Jeopardy provision of the Fifth Amendment. In addition, he contends that the case should be remanded for resentencing before a different judge, though it is unclear from his supplemental brief whether this request is contingent upon our adherence to our original result. We have carefully reviewed these contentions and find them lacking in merit.