967 F.2d 589
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re the Matter of PARLIAMENT SQUARE, LTD., a California
Limited Partnership, Debtor.
PARLIAMENT SQUARE, LTD., a California Limited Partnership,
Plaintiff-Appellant,
v.
CONTINENTAL SAVINGS ASSOCIATION, Defendant-Appellee.
 No. 90-16797.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.
Decided May 26, 1992.
 
 Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Parliament Square (hereinafter "Parliament"), a California limited partnership, owned an apartment complex in Texas subject to a first mortgage held by Continental Savings (hereinafter "Continental"). Beginning in December, 1984, the property experienced storm and fire losses totaling approximately $230,000. Although the $230,000 in insurance proceeds on claims for these losses were paid and deposited into a non-interest bearing Continental Bank Account, the money was never used to repair the property. Instead, Continental retained the insurance proceeds for the purpose of applying them toward Parliament's delinquent mortgage.
 
 
 3
 On September 30, 1985, Parliament and Continental reached an agreement whereby Continental paid itself from the bank account for the delinquent mortgage. However, Continental failed to release the remaining insurance funds in the account for the repair of the property. As a result, Parliament repaired the property at its own expense and was forced to file Chapter 11 Bankruptcy.
 
 
 4
 Parliament instituted the underlying adversary proceeding against Continental on July 22, 1986. The complaint asserts five claims: (1) avoidance of fraudulent transfer, (2) turnover of property, (3) conversion of insurance proceeds, (4) breach of fiduciary duty, and (5) breach of the implied covenant of good faith and fair dealing. On November 4, 1986, the bankruptcy court granted Continental the order it sought modifying the automatic stay of § 362 and allowing Continental to foreclose on the property, unless Parliament made adequate protection payments to Continental. Because Parliament was unable to make the payments, Continental foreclosed on the property.
 
 
 5
 Two years later, on September 26, 1988, the Federal Home Loan Bank Board (hereinafter the "FHLBB" or the "Board") declared Continental insolvent and appointed the Federal Savings and Loan Insurance Corporation (hereinafter "FSLIC") as Continental's receiver. The Board also provided for the organization of a new federal association, Continental Federal. After the organization of Continental Federal, FSLIC transferred substantially all of Continental's assets to Continental Federal in consideration of Continental Federal's assumption of certain Continental liabilities, including depositor claims but excluding unsecured liabilities.
 
 
 6
 The result of these transfers left Continental with no remaining assets to satisfy general unsecured claims. In addition, neither Continental nor FSLIC retained liability for depositor claims. FSLIC therefore moved the bankruptcy court for dismissal under F.R.C.P. 12(b)(1), 12(b)(6), and 12(c). The bankruptcy court granted FSLIC's motion to dismiss. Parliament timely appealed.
 
 
 7
 The district court issued an Order on January 19, 1990, in connection with Parliament's appeal, remanding the case back to the bankruptcy court for a determination whether Parliament was a depositor with Continental. Parliament filed a Notice for Modification of Order on January 26, 1990, requesting that the district court expand its Order to include a determination whether Parliament was a secured creditor of Continental.
 
 
 8
 FSLIC filed its reply on March 27, 1990, and also filed its own Counter Motion for Reconsideration reiterating its allegations that dismissal of Parliament's suit by the bankruptcy court was proper. Continental also requested that the district court's January Order be modified so as to delete its Order to remand and to dismiss Parliament's appeal.
 
 
 9
 On June 20, 1990, the district court issued its Order granting FSLIC's Motion for Reconsideration and denying Parliament's Motion for Modification, thereby affirming the bankruptcy court's dismissal of the complaint. Parliament timely appeals from the order issued by the district court.
 
 
 10
 We will examine in three steps whether Parliament's complaint states a claim upon which relief may be granted. First, we will determine whether Parliament's claims as an unsecured creditor of Continental were properly dismissed. Second, we will determine whether Parliament's complaint was properly construed as not including any claims as a secured creditor of Continental. If the answer to the second inquiry is "yes", we will then determine whether the bankruptcy court improperly denied Parliament the opportunity to amend its complaint to include such claims.
 
 
 11
 1. Were Parliament's unsecured claims properly dismissed?
 
 
 12
 The purchase and assumption agreement with which the FSLIC transferred all of Continental Savings' assets and liabilities to secured creditors, including depositors, to Continental Federal, expressly stated that Continental Federal would not be liable to Continental Savings' unsecured creditors. Because Continental Savings retained no assets and the FSLIC did not assume liability for those claims, unsecured claims are worthless if the purchase and assumption agreement is valid.
 
 
 13
 It is clear that the FSLIC had the authority to enter into purchase and assumption agreements such as the one at issue here. See 12 U.S.C. § 1729(f)(2) (repealed by Pub.L. 101-73, § 407 (1989)); Gulley v. Sunbelt Savings, FSB, 902 F.2d 238, 350-51 (5th Cir.1990), cert. denied, 111 S.Ct. 673 (1991).[1] Because the FHLBB had determined that unsecured claims against Continental Savings were worthless because there were insufficient assets to satisfy the higher priority secured claims, the FSLIC was authorized to transfer all of Continental Savings assets to Continental Federal without providing any security for the unsecured claims. As long as the FHLBB's finding that the unsecured claims were worthless was valid, the FSLIC properly extinguished those claims.
 
 
 14
 Parliament concedes as much, but argues that, under the Supreme Court's recent decision in Coit Independence Joint Venture v. FSLIC, 489 U.S. 561 (1989), it is entitled to a de novo finding regarding the worth of its unsecured claim. However, we need not analyze the meaning of Coit here. Parliament concedes that "were it seeking to become an unsecured creditor, it would have a worthless claim, and there would be no point to further litigation." Because Parliament admits that the board's worthlessness finding was correct, a de novo review of that finding would in any event serve no purpose. See Gulley, 902 F.2d at 351 n. 4. Accordingly, because Parliament's unsecured claims were admittedly worthless, any error in dismissing them was harmless.
 
 
 15
 2. Did Parliament assert a claim as a secured creditor in its complaint?
 
 
 16
 Parliament asserts that its complaint should not be dismissed because it contains a claim alleging that it was a depositor of Continental's and therefore entitled to status as a secured creditor. Both the bankruptcy court and the district court found that no such claim had been raised in the complaint and therefore that Parliament was not entitled to secured creditor status. We agree.
 
 
 17
 Under Bankruptcy Rule 7008, the liberal notice pleading requirements of Fed.R.Civ.P. 8 apply to bankruptcy proceedings. See 5 C. Wright & A. Miller, Federal Practice and Procedure § 1229 (2d ed. 1990). Under this standard, we must determine whether the complaint gave the defendant fair notice that Parliament was asserting a claim against it as a depositor. See In re Entertainment Specialities, Inc., 69 B.R. 556, 559 (Bankr.C.D.Cal.1987).
 
 
 18
 The gravamen of Parliament's complaint was that Continental Savings had misappropriated insurance proceeds. By itself, this claim would ordinarily appear to make Continental an unsecured creditor. Notice that a different type of claim was intended was not provided by Parliament's assertion in the complaint that the insurance proceeds were "deposited" in an account at Continental. The complaint does not allege that the account was Parliament's or that Parliament had any sort of ownership or control interest in the account itself. The complaint asserts only that Parliament had an interest in the proceeds of the insurance policy. Thus, even construed broadly, we do not believe that the complaint provides sufficient notice that Parliament was asserting a claim as a depositor.
 
 
 19
 3. Should Parliament be allowed to amend its complaint to add a claim as a depositor?
 
 
 20
 We review the bankruptcy court's denial of a motion for leave to amend for abuse of discretion, see Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 862 (1983), and affirm.
 
 
 21
 Parliament first clearly asserted a claim as a depositor in its opposition to FSLIC's motion to dismiss, filed 2 1/2 years after its complaint and 3 months after the FHLBB declared Continental Savings insolvent and all unsecured claims worthless. Although delay alone is ordinarily insufficient reason to deny leave to amend, see United States v. Webb, 655 F.2d 977, 980 (9th Cir.1981), here an additional reason supports the bankruptcy court's decision. By the time Parliament raised a depositor claim, the nature of that claim was very different from that of an unsecured claim; by then it was necessary to assert depositor claims against a different entity--Continental Federal; moreover, a depositor claim always related to ownership and control of a savings account rather than to entitlement to insurance proceeds. Cf. In re Welch, 29 B.R. 819, 822 (Bankr.M.D.Tenn.1982). That Parliament's new depositor claim was of a different nature than its earlier unsecured claims provides an additional basis for the denial of leave to amend. See M/V American Queen v. San Diego Marine Constr., 708 F.2d 1483, 1492 (9th Cir.1983). We believe that under these circumstances the bankruptcy court's decision did not constitute an abuse of discretion.
 
 
 22
 In conclusion, the unsecured claims asserted in Parliament's complaint were properly dismissed as meritless, the complaint was properly construed as not containing any secured claim, and the bankruptcy court did not err in denying leave to amend the complaint to add such a claim. Accordingly, the dismissal of the complaint for failure to state a claim upon which relief could be granted is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided for by 9th Cir.R. 21
 
 
 [1]
 The FSLIC no longer has such authority as it was eliminated, along with the FHLBB, by the FIRRE Act, which consolidated the two agencies' functions under the FDIC. The FIRRE did not retroactively abrogate purchase and assumption agreements entered into prior to its enactment